UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| NANCY HALL-WALKER, | ) | Case No. 10-42783 |
| | ) | |
| Debtor. | ) | Judge Jacqueline P. Cox |

MEMORANDUM OPINION AND ORDER ON
DEBTOR'S MOTION SEEKING DAMAGES FOR VIOLATION OF AUTOMATIC STAY
UNDER SECTION 362(k) and MOTION TO ENFORCE ORAL SETTLEMENT
AGREEMENT

**Facts and Background**

On April 30, 2007, a Judgment for Dissolution of Marriage between Nancy Hall-Walker ("the Debtor"), and her former husband, Wyman Hall-Walker ("Mr. Hall-Walker") was entered in Case No. 2005 D 10185 in the Circuit Court of Cook County, Illinois. Article III of the Hall-Walkers' Marital Settlement Agreement states, in relevant part that:

> "[N]ancy shall take any and all actions necessary to refinance the outstanding first mortgage on said property and have Wyman's name removed from said mortgage, promissory note and/or debt. Nancy shall take all actions necessary to complete said refinancing . . . no more than 90 days of the entry of the Judgment of Dissolution of Marriage herein." 10 bk 42783, Dkt. 26, Exhibit B, p. 20.

The Marital Settlement Agreement also states:

> "Nancy shall be solely responsible for any and all charges accruing as a result of her ownership of said home, including any amounts due and owning . . . and shall further, hereinafter, indemnify Wyman for any loss incurred on account thereof, including court costs, expenses and attorneys fees." 10 bk 42783, Dkt. 26, Exhibit B, p. 19.

Debtor states that she was unable to refinance the mortgage in 2009 pursuant to the Marital Settlement Agreement and fell behind on her mortgage payments, at which time a Petition for Rule to Show Cause was filed against her in the Domestic Relations Court on or about February 10, 2009, seeking to sanction her for failure to refinance the mortgage debt. A finding of direct civil contempt was entered against the Debtor on July 1, 2009. The order required her to remove Mr. Hall-Walker's name from the mortgage, promissory note and/or debt, and to pay the amount of $6,993.41 to Seaway National Bank to cure the mortgage arrearage. The order also threatened to incarcerate the Debtor for 90 days if she failed to comply with the court order.

According to the Debtor, she filed her first bankruptcy case, 09-25523, on July 15, 2009, to allow her to cure her mortgage arrearage.[1] Periodic status hearings on Mr. Hall-Walker's collection efforts in the Domestic Relations case were held by Judge Vega while the Debtor's previous bankruptcy case was pending. On July 15, 2009, in light of the Debtor's bankruptcy case, the contempt hearing was entered and continued to August 17, 2009 for status. Debtor's 12/16/10 Hearing Exhibit No. 1, July 15, 2009 Order. At the August 17, 2009 status hearing, an order was entered setting another status hearing on October 8, 2009, continuing the court's finding of indirect civil contempt against the Debtor, as well as Mr Hall-Walker's right to file a fee petition. Debtor's 12/16/10 Hearing Exhibit No. 2, August 17, 2009 Order. At the October 8, 2009 status hearing, the matter was continued to June 14, 2010. Debtor's 12/16/10 Hearing Exhibit No. 3, October 8, 2009 Order.

---

[1] 11 U.S.C. § 1322(b)(3) provides that a debtor's chapter 13 plan may provide for the curing or waiving of any default.

The Debtor's first bankruptcy case was dismissed on August 18, 2010 for material plan payment default pursuant to 11 U.S.C. § 1307(c)(6). Debtor's current bankruptcy case was filed on September 24, 2010. The deadline to file a proof of claim in the current bankruptcy case was January 31, 2011. The claims register indicates that no claim was filed by Mr. Hall-Walker, or by Mr. Hall-Walker's attorney, Julie Brett ("the Respondent").

Mr. Hall-Walker was listed as a creditor on the Debtor's Schedule F. 10 bk 42783, Dkt.1, p. 22.

On October 14, 2010, during the pendency of the Debtor's current bankruptcy case, Debtor's attorney, Debra J. Voohies Levine ("Levine"), appeared on her behalf at the status hearing in the domestic relations case and requested that the matter be placed on a Bankruptcy Calendar, to which Judge Vega responded that no such calender exists. Judge Vega ordered that no action on collection shall be taken while stay of bankruptcy is in effect, and another status hearing was set for April 5, 2011. The October 14, 2010 order notes that Levine "has threatened Counsel for Respondent with sanctions for continuing Petition for Rule to Show Cause." Debtor's 12/16/10 Hearing Exhibit No. 6, October 14, 2010 Order.

At argument, the Debtor testified that her health was adversely affected as a result of the stress caused by the "numerous status dates," causing her to be hospitalized for five days. Debtor filed the instant motion seeking damages for violation of the automatic stay pursuant to 11 U.S.C. § 362(k), alleging that the automatic stay was violated when collection efforts were pursued while the stay was in effect. Damages are sought against Respondent Julie Brett ("Respondent"), Mr. Hall-Walker's attorney in the domestic relations case.

## The Automatic Stay

11 U.S.C. § 362(a) provides:

> [A] petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

11 U.S.C. § 362(k)(1) provides:

> [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

The purpose of such safeguards in bankruptcy law is to:

> [P]rotect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan or reorganization for the debtor.

*A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 998 (4th Cir. 1986), *cert. denied*, 479 U.S. 876, (*quoting Matter of Holkamp*, 669 F.2d 505, 508 (7th Cir. 1982)). "The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." *Fidelity Mortg. Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir. 1976). *cert. denied*, 429 U.S. 1093.

The automatic stay includes civil contempt proceedings, and actions brought by a creditor to enforce a judgment against a debtor. In *In re Benalcazar*, where a judgment creditor pursued civil contempt proceedings against a debtor despite having knowledge of the debtor's

Case 10-42783   Doc 49   Filed 02/22/11   Entered 02/24/11 10:37:54   Desc Main
          Document      Page 5 of 14

bankruptcy, the court held that "such deliberate action, taken with knowledge of the facts giving rise to the automatic stay is sufficient to establish a willful violation of the stay. . . ." *In re Benalcazar*, 283 B.R. 514, 531 (Bankr. N.D. Ill. 2002).

## Analysis

The court finds that obtaining the order of October 14, 2010 setting the matter for status on April 5, 2011 was a willful violation of section 362(a). The evidence presented shows that the Respondent had notice of the Debtor's current bankruptcy case as she was notified immediately preceding the hearing that she could face sanctions for violating the stay. Despite this warning, the Respondent proceeded with the status hearing and refused to desist from efforts to enforce a pre-petition debt when enforcement was stayed by the automatic stay. The Respondent even drafted a portion of the October 14, 2010 order that was entered by Judge Vega. Transcript of December 16, 2010 Hearing, pp. 53, 62 (hereinafter, "Transcript 1").

The Respondent's action in continuing the October 14, 2010 status hearing was a willful violation, as section 362(a) is clear: the provision operates to stay the continuation of all judicial proceedings which "includes the maintenance of collection actions filed in state court." *Eskanos & Adler, P.C. v. Leetien*, 309 F. 3d 1210, 1214 (9th Cir. 2002). The court in *Eskanos* was unequivocal in noting that "[A] party violating the automatic stay, through continuing a collection action in a non-bankruptcy forum, must automatically dismiss or stay such proceeding, or risk possible sanctions for willful violations . . . ." *Id.*

The Ninth Circuit also discussed the scope and importance of the automatic stay:

> It would be inconsistent with the statutory scheme to countenance post-petition collection actions filed in state court. In providing the automatic stay, Congress intended all claims against a debtor be brought in a single forum, the bankruptcy

court. *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993). The scope of protections embodied in the automatic stay is quite broad, and serves as one of the most important protections in bankruptcy law. *Id.* See also *Chugach Timber Corp. v. Northern Stevedoring & Handling Corp.*, 23 F.3d 241, 243 (9th Cir. 1994). Collection actions maintained in state court threaten the proper execution of bankruptcy proceedings by exposing the debtor's estate to multiple collection actions, undermining the debtor's ability to reorganize her financial affairs, and jeopardizing the creditors as a class with the possibility that one creditor will obtain payment to the detriment of all others. *Hillis Motors*, 997 F.2d at 585. For these reasons we have held that the automatic stay requires an immediate freeze of the status quo by precluding and nullifying post-petition actions. *Id. Eskanos*, 309 F.3d at 1214.

The Respondent testified at the December 16, 2010 hearing that she was not attempting to collect a debt from the Debtor, however the contempt hearings were continued for the ultimate purpose of ensuring that the mortgage arrearage was paid by the Debtor, as Mr. Hall-Walker could be held liable for the Debtor's missed mortgage payments. Additionally, by the Respondent's own testimony (and as shown by the court orders) she also intended to file a fee petition. Transcript 1, p. 59. If the Respondent was unsure of how to proceed following the filing of the Debtor's bankruptcy petition, she could have consulted the bankruptcy lawyers at her law firm. However, the Respondent testified that she did not consult with her firm's bankruptcy lawyers for guidance until the instant motion was filed.

During a time when the Debtor should have been focused principally on her bankruptcy case in an effort to reorganize her debts, she was being summoned to Domestic Relations Court, accruing additional attorney's fees and facing threats of incarceration for her failure to refinance the mortgage.

If the Respondent wished to continue with collection efforts on behalf of her client, she could have sought a motion to lift the stay under section 362(d). In addition, she could have filed

a proof of claim on behalf of her client reflecting his contingent liability for the missed mortgage payments of $6,993.41. Pursuant to 11 U.S.C. § 101(5)(A), a claim includes a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, *contingent*, matured, disputed, undisputed, legal, equitable, secured or unsecured." (emphasis added).

### Provisions of the Debtor's Chapter 13 Plan

The Debtor scheduled her former spouse as an unsecured creditor in this Chapter 13 case. The Debtor's proposed plan which was filed with the petition for bankruptcy relief provided that unsecured creditors would receive 90% of the amounts due them. 10 bk 42783, Dkt. 2, filed 9/24/10. Dkt. 2-1 lists Mr. Hall-Walker as a recipient of notice of Dkt. 2.

On October 13, 2010 the Debtor filed an Amended Plan which provided that unsecured creditors would receive 12% of the amounts due them. 10 bk 42783, Dkt. 17. Dkt. 17-1 lists Mr. Hall-Walker as a recipient of notice of Dkt. 17. The Debtor's motion seeking sanctions regarding the domestic relations case was filed herein on October 20, 2010. 10 bk 42783, Dkt. 22. On November 23, 2010 the Debtor filed another Amended Chapter 13 Plan that provided for payment of 100% (plus 5% interest) on the claims of unsecured creditors. 10 bk 42783, Dkt. 30. Dkt. 30-1 lists Mr. Hall-Walker as a recipient of notice of Dkt. 30. The Debtor's November 23, 2010 Chapter 13 Plan was confirmed on November 29, 2010, Dkt. 37. Dkt. 37-1 lists Mr. Hall-Walker as a recipient of notice of Dkt. 37.

### The Effect of Confirmation of the Debtor's November 23, 2010 Plan

The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan. 11 U.S.C. § 1327(a). The November 23, 2010 Chapter

13 plan provides payments of 100% (plus 5% interest) to unsecured creditors. As an unsecured creditor Mr. Hall-Walker would have been entitled to payments of 100% (plus 5% interest) pursuant to the Plan had he filed a proof of claim. Although his attorney was before the court since the November 15, 2010 hearing date of the October 20, 2010 motion for sanctions, no proof of claim was filed, even though this court asked on the record at the December 16, 2010 hearing whether a proof of claim had been filed on behalf of Mr. Hall-Walker. Transcript No. 1, p. 77.

Under 11 U.S.C. § 502(a) "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects." Federal Rule of Bankruptcy Procedure 3021 provides that "[a]fter a plan is confirmed, distribution shall be made to creditors whose claims have been allowed." Because he failed to file a claim Mr. Hall-Walker does not have an allowed claim which can be paid by the chapter 13 trustee. Many courts have ruled that a creditor that fails to file a proof of claim, and on whose behalf no claim is filed by the debtor or trustee, cannot have an allowable claim. Allowance is prerequisite to the payment of claims through the Chapter 13 plan. *Clark v. Transamerica Financial Services, Inc., (In re Clark)*, 205 B.R. 140, 141 (Bankr. S.D. Ill. 1997); *In re Schaffer*, 173 B.R. 393, 395 (Bankr. N.D. Ill. 1994); *In re Linkous*, 990 F.2d 160, 165 (4th Cir. 1993) (dissenting opinion).

### Effect of a Chapter 13 Discharge Herein

Section 1328(a) which governs a Chapter 13 discharge provides that "[A]fter completion by the debtor of all payments under the plan . . . the court shall grant the debtor a discharge of all debts provided for by the plan . . . ." 11 U.S.C. § 1328(a). The majority of courts have held that

the requirement that the plan provide for payment of the debts is satisfied where the "[C]reditor was scheduled or had notice of the bankruptcy case." *In re Trembath*, 205 B.R. 909, 912 (Bankr. N.D. Ill. 1997). Mr. Hall-Walker does not argue that he did not have notice of this bankruptcy case. He was scheduled as an unsecured creditor holding a nonpriority claim. 10 bk 42783, Schedule F, Dkt.1.

Pursuant to the Marital Settlement Agreement Mr. Hall-Walker had a contingent claim for the missed mortgage payments. However, because no proof of claim was filed on his behalf prior to the claims bar date of January 31, 2011, if the Debtor completes her Plan obligations, he may be forever barred from recovering or enforcing that debt. *See In re Cody*, 246 B.R. 597, 600 (Bankr. E.D. Ark. 1999) (holding that where the confirmed plan provides for the debt, "[I]f the debtor fulfills his obligations under the Bankruptcy Code (e.g., making all plan payments), the debtor will be discharged of those debts, even those where payments cannot be made . . . because the creditor has failed to file a proof of claim."). In *Cody,* as in this case, a debtor's former spouse failed to file a proof of claim in the debtor's Chapter 13 case, leading the court to find that because the former spouse's debt was scheduled, her claim was provided for by the plan and was discharged upon the debtor's completion of plan payments. The same may be true for the Respondent's failure to file a proof of claim for attorney's fees.

Finally, while the court compliments Judge Vega in noting in the October 14, 2010 order that "No action on collection shall be taken while stay of bankruptcy is in effect," holding the October 14, 2010 hearing and the continuance of the status hearing violated the automatic stay. Therefore, this court holds that the October 14, 2010 order entered by Judge Vega is void, and that the Debtor need not attend the April 5, 2011 status hearing set by the void order, as it has

long been established that "actions taken in violation of an automatic stay are void." *Middle Tenn. News Co., Inc. v. Charnel of Cincinnati Inc.*, 250 F.3d 1077, 1082 (7th Cir. 2001). *See also Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1207 (3d Cir.1991) ("Since the bankruptcy court with jurisdiction over [debtor's] Chapter 13 case never granted relief from the automatic stay. . . the district court had no authority to continue the proceedings . . . [and] must vacate its orders. . . .").[2]

This matter reveals the need for a bankruptcy calendar in the Domestic Relations Division of the Circuit Court of Cook County, Illinois. When this court sat as a judge in the Circuit Court of Cook County, Illinois cases were routinely assigned to a Law Division Bankruptcy Calendar when parties involved in Law Division matters sought relief under the Bankruptcy Code.

For the reasons stated herein, this court finds that the continuing efforts to collect on the debt to the Debtor's former spouse constitute a willful violation of the automatic stay, and pursuant to section 362(k), the Debtor is entitled to actual damages, including costs and attorney's fees.

### The Parties are Bound by the Terms of the Settlement Agreement

At the January 26, 2011 hearing which was originally set to determine damages in relation to the Respondent's violation of the automatic stay, on the Respondent's motion, a hearing was held to determine whether an alleged oral settlement agreement reached the day before by the Debtor and the Respondent ("the parties"), was binding under Illinois law. The court granted the Respondent's request to hold a hearing on whether the oral settlement

---

[2]In reaching its decision, the court explained that "[B]y treating judicial acts and proceedings in violation of the stay as void acts, we deter non-bankruptcy courts from continuing proceedings against a debtor who has sought federal bankruptcy protection." *Maritime*, 959 F.2d at 1207.

agreement was binding.

At argument, the Respondent called Mr. Howard London ("London"), a partner at the Respondent's law firm, to testify about settlement discussions with Levine on behalf of the Respondent.

London testified that he contacted Levine via telephone to make a monetary settlement offer that would fairly compensate the Debtor. Transcript of January 26, 2011 Hearing, pp. 8-9 (hereinafter, "Transcript 2"). London proposed an initial settlement amount of $3,750, a figure he arrived at after reviewing the alleged damages, and the amount of fees that were incurred after the filing of Debtor's bankruptcy. Transcript 2, p. 9. London testified that in response to his initial offer, Levine did not accept the $3,750 amount, and stated that she would have to talk to her client and get back to him. Transcript 2, p. 10. London had another conversation with Levine, who suggested that the matter could settle for $7,000 and "some change." In response to this offer, London indicated that he did not have the authority to offer that amount, and stated that if the Debtor would authorize Levine to accept $5,000, he would do what he could to get the authority from his firm to offer $5,000. Transcript 2, p.11.

Levine contacted London by telephone, and stated that the Debtor wanted "to go for the settlement of $5,000," and that the Debtor wanted additional conditions in the agreement, including a personal apology from the Respondent. The additional conditions were accepted. Transcript 2, pp. 12-13. London also testified that Levine agreed that she would not proceed with the damages hearing scheduled for January 26, 2011, because the $5,000 was in settlement of all damages. He also testified that they agreed to mutual releases, releasing the Debtor from any liability for attorney's fees to the Respondent's law firm relating to the contempt collection

efforts, and releasing the Respondent from any further liability to the Debtor. Transcript 2, p. 16. London testified that a copy of the proposed written settlement agreement, including the additional terms, was transmitted to Levine on January 25, 2011. Respondent's January 26, 2011 Hearing Exhibit No. 2, Settlement Agreement.

A check in the amount of $5,000 was cut and made payable to "DVL Law Offices, LLC," Levine's firm. The check was signed by Mr. London, and dated January 25, 2011. Respondent's January 26, 2011 Hearing Exhibit No. 1, Settlement Check. London testified that while speaking with Levine, he informed her that he needed her taxpayer identification number to "cut the check," and that Levine provided that information to him.

The Debtor testified that she received a telephone call from her attorney, Levine, who informed her that the Respondent had offered $5,000. The Debtor testified that she responded, "I guess I'll go with that." Transcript 2, p. 44. On cross-examination however, the Debtor testified that her response to the $5,000 offer was "go forth." Transcript 2, p. 54. The Debtor testified that she thought about her decision overnight, decided that she was not okay with the terms, and that she did not know what the agreement's additional terms were. Transcript 2, pp. 55-57.

### Illinois Law On Oral Settlement Agreements

Under Illinois law, an oral settlement agreement is valid where there is an offer, acceptance, and a meeting of the minds. *Elustra v. Mineo et al*, 595 F.3d 699 (7th Cir. 2010), citing *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007) (noting that the determination of whether there has been a meeting of the minds as to material terms depends on the parties' objective conduct rather than their subjective beliefs).

Further, where the settlement agreement is made out of court and out of the client's

presence, the agreement is valid only if the client expressly authorized the attorney to enter into the agreement. *Malone v. Godinez*, No. 02-1431, 2003 WL 463475, at * 2 (7th Cir. Feb. 18, 2003). The court finds, based on the Debtor's testimony, that Levine was expressly authorized to enter into the proposed settlement agreement and that the settlement agreement is valid and enforceable.

### Analysis

For the reasons set forth herein, the court finds that there was a valid offer, acceptance and meeting of the minds as to the material terms of the settlement agreement, binding the parties to its terms.

While the Debtor testified that she did not read the agreement, and that there were several provisions that she did not approve of, London's testimony revealed that it was the Debtor's attorney, Levine, who proposed the additional terms.

From the evidence presented, it is clear that Levine had the authority to enter into the settlement agreement on the Debtor's behalf. The Debtor testified that Levine was authorized to negotiate and propose terms on her behalf. Transcript 2, p. 60. Levine's authority to enter into the agreement is evident by the Debtor's response of "I guess I'll go with that" when Levine told the Debtor of the $5,000 settlement offer. This court is not convinced by the Debtor's later testimony (on cross-examination), that she merely wanted her attorney to continue to negotiate an agreement. Transcript 2, p. 54.

This court considered the conduct of the parties in reaching its decision. That the $5,000 check with a tax identification number provided to the Respondent's law firm by Levine was cut on January 25, 2011, is further evidence that the parties had previously settled the matters in

issue.

The Debtor's alleged misunderstanding does not affect the binding nature of the agreement, as Levine was authorized to negotiate and to settle this matter on her behalf.

The Debtor's testimony that she "changed her mind" overnight is irrelevant, as the agreement had been made when she accepted the $5,000 offer when she said "I guess I'll go with that" the previous day. Surely the Debtor, a licensed attorney who practices law in Illinois, was well aware that once the settlement agreement had been made, her last minute change of heart could not invalidate the agreement.

Finally, there was no evidence presented by either party that suggests that the execution of the written agreement was a condition precedent to the parties' oral settlement agreement. *See Schaap v. Executive Indus., Inc.*, 760 F. Supp. 725, 728 (N.D. Ill.1991) (noting that absent a showing of a condition precedent requiring it, the fact that the written agreement was not executed does not establish the lack of an enforceable agreement). Therefore, the oral agreement is binding.

It is hereby ordered that the Debtor and the Respondent are bound by the terms of the settlement agreement, including the provision that $5,000 is to be paid to the Debtor in satisfaction of her claims for damages and attorney's fees incurred due to the violation of the automatic stay.

Dated: February 22, 2011          ENTERED:

                                                 *Jacqueline P. Cox*
                                  _____
                                  Jacqueline P. Cox
                                  United States Bankruptcy Judge